**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER GARY SWOOPE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. A. No. 4:13-CV-00307-HML** |
| | ) | |
| **CSX TRANSPORTATION, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**CSX TRANSPORTATION, INC.'S OMNIBUS MOTION IN LIMINE
WITH INCORPORATED MEMORANDUM OF LAW**</u>

COMES NOW Defendant CSX Transportation, Inc. ("CSXT") and hereby submits this Omnibus Motion in Limine.

## I.  MATTERS WHICH SHOULD BE EXCLUDED

The Court should exclude any evidence, testimony, examination, or argument regarding the following matters:

**1. Subsequent Remedial Measures.**  A team of CSXT officials investigated Plaintiff's accident and prepared a report.  (<u>See</u> CSXT Ex. A hereto (Bates-stamped CSXT 000009A-000069A); Pl.'s Trial Ex. 1, Ex. B hereto).   Both sides intend to use portions of the report at trial, and it appears Plaintiff intends to offer a redacted version of the report at trial.  Nevertheless, out of an abundance of caution, CSXT objects to the admission of portions of the report which propose subsequent

remedial measures.  See Fed. R. Evid. 407.  The report, generated for the purpose of analyzing the accident and preventing similar occurrences, includes a section entitled "Investigative Team Results" which proposes that employees be "briefed . . . to make sure they understand to remain alert for down trees and other debris during and after stormy weather moves through the area,"  (CSXT Ex. A at CSXT 000014A-15A), along with a section entitled "Safety Action Plan" which similarly proposes that train crews be briefed about "safety during severe weather" and the need to be "especially alert when there is a possibility of debris on tracks."  (Id. at CSXT 000069A.)

These portions of the report should be excluded pursuant to Fed. R. Evid. 403 and 407.  "[T]here is authority supporting the exclusion of evidence of post-accident investigations under Rule 407."  Complaint of Consol. Coal Co., 123 F.3d 126, 136 (3d Cir. 1997) (concluding that the district court properly excluded a memorandum regarding post-accident investigation).  Courts in this Circuit have reached similar conclusions.  In Russell v. Page Aircraft Maintenance, Inc., 455 F.2d 188, 190-92 (5th Cir. 1972), the former Fifth Circuit held that the district court properly excluded a report prepared the day after an accident which contained safety recommendations. Likewise, in Alimenta v. Stauffer, 598 F. Supp. 934, 940 (N.D. Ga. 1984), the district court concluded that a report prepared for the purpose of improving

company "procedures and controls" was inadmissible under Fed. R. Evid. 403 and 407.

Even those courts which have concluded that Rule 407 does not protect the factual findings of an investigation have nonetheless required the redaction of documents which propose or direct subsequent remedial measures.[1] Even assuming *arguendo* that Rule 407's ambit "includes only the actual remedial measures themselves and not the initial steps toward ascertaining whether any remedial measures are called for," Fasanaro, 687 F. Supp. at 487, the Court should exclude those portions of the report which propose subsequent remedial activity.

**2. Implicit appeals for punitive damages.**  The "[d]amages recoverable in an FELA action are compensatory only." See, e.g., Central of Georgia R. Co. v. Swindle, 260 Ga. 685, 686, 398 S.E.2d 365, 366 (1990).[2]  Arguments suggesting or implying the railroad was grossly negligent, has improper motives, or should be

---

[1] See, e.g., Edsall v. CSX Transp., Inc., 106-CV-389, 2008 U.S. Dist. LEXIS 6247, at *15-17 (N.D. Ind. Jan. 28, 2008) (concluding in FELA action that portions of railroad's post-accident investigation report which proposed corrective action were barred by Fed. R. Evid. 407); see also Thornton v. Diamond Offshore Drilling, Inc., Civ. A. No. 07-1839, 2008 U.S. Dist. LEXIS 53577, at *20-22 (E.D. La. May 19, 2008); Williams v. Asplundh Tree Expert Co., 305-CV-479, 2006 U.S. Dist. LEXIS 73238, at *15-17 (M.D. Fla. Oct. 6, 2006); cf. Fasanaro v. Mooney Aircraft Corp., 687 F. Supp. 482, 487 (N.D. Cal. 1988) (allowing evidence of post-accident testing but excluding reference to post-event design changes in product-liability case).

[2] See also Kozar v. Chesapeake & O. R. Co., 449 F.2d 1238, 1240 (6th Cir. 1971); Boyd v. Cinmar of Gloucester, 919 F. Supp. 208, 210 (E.D. Va. 1996).

punished are inappropriate and prejudicial.  See id.  Nor may counsel "ask[] the jury as the 'conscience of the community' to 'send a message with its verdict,'" or offer "his personal opinion as to . . . the justness of his client's cause and the perfidy of the defendant." Maercks v. Birchansky, 549 So.2d 199, 199-200 (Fla. App. 3d Dist. 1989); see also Neal v. Toyota Motor Corp., 823 F. Supp. 939, 943 (N.D. Ga. 1993) (concluding that counsel's "'send the message' argument" was improper and prejudicial).

**3.  "Golden Rule" arguments or requests for jurors to "put themselves in Plaintiff's shoes."**   A plaintiff is not allowed to arouse the jury's sympathy by exhorting the jury to "place itself in a party's shoes."  See, e.g., Burrage v. Harrell, 537 F.2d 837, 839 (5th Cir. 1976).  "The so-called 'Golden Rule' argument urges the jurors to place themselves in the position of [the] plaintiff or to allow such recovery as they would wish if in the same position."  Naimat v. Shelbyville Bottling Co., 240 Ga. App. 693, 697, 524 S.E.2d 749 (1999) (citing Opatut v. Guest Pond Club, 188 Ga. App. 478, 481, 373 S.E.2d 372) (1988)). "It is improper because it asks the jurors to consider the case, not objectively as fair and impartial jurors, but rather from the biased, subjective standpoint of a litigant."  Id.

**4.   Reference to the congressional intent or purpose of the FELA.** References to "the history of the Federal Employers' Liability Act and the reasons

4

behind its enactment" have "no place in the jury's deliberations as to the merits of th[e] case."  Atl. Coast Line R. Co. v. McDonald, 103 Ga. App. 328, 339, 119 S.E.2d 356, 364 (1961); see also Stillman v. Norfolk & W. R. Co., 811 F.2d 834, 838 (4th Cir. 1987).   Arguments addressed to the jury regarding the FELA's purpose, intent, or history are improper and prejudicial.  McDonald, 103 Ga. App. at 339, 119 S.E.2d at 364.

**5. Reference to Plaintiff's ineligibility for "worker's compensation" or the (un)availability of any benefit, recovery, or remedy apart from the FELA.**  References to a plaintiff's ineligibility for workers' compensation benefits or to the exclusivity of remedies under the FELA are both irrelevant and prejudicial.[3]

**6. Reference to (a) other settlements, verdicts or lawsuits; or (b) other accidents, injuries or occurrences.**   Should Plaintiff attempt to refer to other occurrences or claims, CSXT requests the Court to require a showing of *substantial* similarity before allowing Plaintiff to introduce any such evidence.  See, e.g., Tran v. Toyota Motor Corp., 420 F.3d 1310, 1316 (11th Cir. 2005) (explaining "doctrine of substantial similarity"); see also Reid v. BMW of N. Am., 464 F. Supp. 2d 1267,

---

[3] See Norfolk Southern Ry. Co. v. Thompson, 208 Ga. App. 240, 241-42 (1993) (citing Stillman, 811 F.2d at 838); Kodack v. Long Island R. Co., 342 F.2d 244, 247 (2d Cir. 1965)); Tucker v. Kansas City Southern R. Co., 765 S.W.2d 308, 311(3) (Mo. App. 1988); see also Toth v. Grand Trunk R.R., 306 F.3d 335, 355 (6th Cir. 2002) (noting that the jury "should not consider the availability or unavailability of other forms of compensation in deciding the underlying issue of liability").

1271 (N.D. Ga. 2006) (citing <u>Heath v. Suzuki Motor Corp.</u>, 126 F.3d 1391, 1396 n.12 (11th Cir. 1997); <u>Jones v. Otis Elevator Co.</u>, 861 F.2d 655, 661-62 (11th Cir. 1988)).   Absent a showing of substantial similarity, evidence of prior accidents is both irrelevant and unduly prejudicial.  <u>See</u> <u>Heath</u>, 126 F.3d at 1396.

Not only must Plaintiff show that the prior accident occurred under similar conditions and shared the same alleged cause as the incident in question, he should also be required to show that the prior incident did not occur "too remote in time." <u>Hessen v. Jaguar Cars, Inc.</u>, 915 F.2d 641, 649 (11th Cir. 1990).   Even after a showing of substantial similarity has been made, the Court may nonetheless exclude evidence of other accidents if the admission of such evidence would result in undue prejudice, confusion of the issues, or waste of time.  <u>Reid</u>, 464 F. Supp. 2d at 1271; <u>see also</u> <u>Wilson v. Bicycle South, Inc.</u>, 915 F.2d 1503, 1510 (11th Cir. 1990).

**7. Suggestion that CSXT could have provided a "safer" place to work or used alternative methods offered without reference to whether CSXT exercised reasonable care.**  CSXT recognizes that, as a general rule, evidence of safer alternative methods is both relevant and admissible. <u>See, e.g.</u>, <u>Stone v. New York, Chicago, & St. Louis R.R. Co.</u>, 344 U.S. 407, 409 (1953).   However, under the FELA, "the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative

method for performing the task." <u>McKennon v. CSX Transp.</u>, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1994) (citing <u>Stillman</u>, 811 F.2d at 838).  Indeed, the availability of alternative methods is of "no significance" if the method employed "was not an inherently unsafe one."[4]  <u>Id.</u> (citing <u>Soto v. S. Pac. Transp. Co.</u>, 644 F.2d 1147, 1148 (5th Cir. 1981)).   Plaintiff should not be allowed to "attempt to prove negligence 'in a vacuum' by showing that safer equipment could have been used, irrespective of whether the equipment actually used met the standard of reasonable care."  <u>Combs v. Norfolk & W. Ry. Co.</u>, 256 Va. 490, 497, 507 S.E.2d 355, 359 (1998).  The Court should exclude any argument that the mere existence of alternative methods is proof that CSXT acted negligently.

**8. Reference to Plaintiff's (a) good character, truthfulness, or reputation for safety on the job; or (b) lack of employee discipline.**  CSXT expects Plaintiff to devote argument at trial to his supposed good character, truthfulness, and lack of employee discipline.   Evidence of Plaintiff's character or traits should not be admitted for the purpose of proving that he acted in conformity therewith on the date

---

[4] CSXT's duty is to provide a reasonably safe place to work, not to maintain a perfect working environment or to provide the latest or best tools, technology, or equipment.  <u>See</u> <u>Chicago & Northwestern Ry. Co. v. Bower</u>, 241 U.S. 470, 474, (1916) (explaining railroad "is not required to furnish [the employee with] the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use are reasonably safe and suitable"); <u>Van Gorder v. Grand Trunk W. R.R.</u>, 509 F.3d 265, 269 (6th Cir. 2007) (explaining railroad required only to act reasonably, not "to eliminate all workplace dangers").

of his accident.  See Fed. R. Evid. 404.  Similarly, evidence of a witness's "truthful character is only admissible after the witness's character for truthfulness has been attacked."  Fed. R. Evid. 608(a).  More generally, evidence of Plaintiff's supposed good character, work history, or the absence of prior employee discipline is irrelevant.  See, e.g., Johnson v. Union Pac. R.R. Co., 805-CV-373, 2007 U.S. Dist. LEXIS 74423, at *11-12 (D. Neb. Oct. 4, 2007).

Nor should the Court allow Plaintiff to present evidence that CSXT did not charge him with any violation of work rules following the accident unless CSXT opens the door by arguing at trial that Plaintiff broke work rules.  "[I]f Defendant does not present evidence that Plaintiff violated work rules, then Plaintiff's introduction of the investigation and/or subsequent decision not to charge him with any violation is irrelevant and will not be permitted."  Gaskins v. CSX Transp., Inc., 104-CV-2952, 2006 U.S. Dist. LEXIS 100826, at *21 (N.D. Ga. Sept. 5, 2006).

**9. Statements by Plaintiff regarding anything his physicians allegedly told him.** Although Plaintiff may testify as to treatment he has received, he may not offer hearsay regarding what his physician allegedly told him.  See, e.g., Rudd v. Geneva County Comm'n, Case No. 1:06-CV-233-WKW, 2008 U.S. Dist. LEXIS 102553, at *21 (M.D. Ala. Dec. 18, 2008) (describing such testimony as "rank hearsay") (citing Macuba v. DeBoer, 193 F.3d 1316, 1324-25 (11th Cir. 1999)).

CSXT asks the Court to preclude Plaintiff from offering testimony regarding statements his medical providers may have made regarding Plaintiff's diagnosis, prognosis, disability, or impairment.

**10. Reference to conversations Plaintiff has had with other people regarding the pertinent events.**  Similarly, evidence of statements made by non-parties during conferences, conversations, or discussions with Plaintiff constitutes inadmissible hearsay.  Fed. R. Evid. 801.  Plaintiff should be prohibited from relaying the substance of any statements made by others in conversation regarding the underlying accident.

**11. Medical expenses paid by CSXT.**  CSXT paid the bulk of Plaintiff's medical expenses under a group insurance contract; thus, Plaintiff should be prohibited from presenting these expenses to the jury as part of his claim for damages or as somehow bearing on the severity of his injuries.  In this regard, the Georgia Court of Appeals has explained that CSXT's payments of medical expenses under group insurance contracts are not from a collateral source.  See CSX Transp., Inc. v. Williams, 230 Ga. App. 573, 577, 497 S.E.2d 66, 69-70 (1998).  Because these payments "are not from a collateral source . . . the plaintiff should be denied the right to offer evidence of medical bills in support of its claim for damages on the ground that those damages have already been paid to the plaintiff."  Ford v. Nat'l

R.R. Passenger Corp., 734 F. Supp. 215, 216-17 (D. Md. 1990); see also Fuhrman v. Reading Co., 439 F.2d 10, 14 (3d Cir. 1971) (concluding that trial court erred in permitting jury to award medical expenses that "had in fact been paid by the defendant").   Evidence of medical bills or expenses which CSXT has paid is irrelevant.[5]   Indeed, to allow Plaintiff to present evidence of such expenses could enable him to receive a "windfall."   Clark v. Nat'l R.R. Passenger Corp., 654 F. Supp. 376, 378 (D.D.C. 1987).   At a minimum, if Plaintiff is allowed to present evidence of medical expenses, the jury should be informed that CSXT has in fact paid those expenses pursuant to a collective bargaining agreement (and not as an admission of fault).

**12. Reference to any discovery dispute, including any alleged failure or refusal to produce any document, statement, or other evidence.**   Discovery disputes are simply irrelevant to the questions being tried by the jury and should be excluded.   See Fed. R. Evid. 401.   Further, references to such disputes are both improper and prejudicial.   See, e.g., McPheeters v. Black & Veatch Corp., 427 F.3d

---

[5] See Varhol v. Nat'l R.R. Passenger Corp. 909 F.2d 1557, 1565-1566 (7th Cir. 1990) (en banc) (per curiam) (concluding that medical bills were of questionable relevance and that "the possibility of jury confusion, misuse, and double-recovery outweighed the bills' probative value"); Muzzleman v. Nat'l Rail Passenger Corp., 839 F. Supp. 1094, 1097 (D. Del. 1993) (excluding evidence of medical expenses); Lyons v. S. Pac. Transp. Co., 684 F. Supp. 909, 911 (W.D. La. 1988) (same); Gonzalez v. Indiana Harbor Belt R.R. Co., 638 F. Supp. 308, 310 (N.D. Ind. 1986) (same).

1095, 1101 (8th Cir. 2005) (affirming district court's "refus[al] to inject [a] discovery dispute into the trial").

**13. Reference to persons present in the courtroom who are not active participants or witnesses in the trial, such as CSXT claims personnel.**  At best, any such reference would be wholly irrelevant; at worst, such comments could unduly prejudice CSXT.  See Fed. R. Evid. 401-403; see also Ray v. Ford Motor Co., No. 3:07cv175, 2011 U.S. Dist. LEXIS 143121, at *17-18 (M.D. Ala. Dec. 13, 2011) (granting motion in limine to preclude reference to the presence or absence of Ford representatives in the courtroom); Prescott v. CSX Transp., Inc., No. CV-512-013, 2013 U.S. Dist. LEXIS 40438, *20 (S.D. Ga. Mar. 22, 2013) ("The presence of non-participating CSXT representatives in the courtroom is irrelevant.").  CSXT requests the Court to exclude any reference to the presence or absence of corporate representatives or claims personnel.

**14. References to cumulative/repetitive trauma, "wear and tear," that Plaintiff "gave his life" to the railroad, or that CSXT "used him up."**  Plaintiff claims he was injured following a discrete occurrence.  Therefore, any comments related to Plaintiff "wearing out" or the like would be irrelevant, inflammatory, and improper. Fed. R. Evid. 401-403.

**15. References to:  (a) the relative status of the parties; (b) CSXT's alleged size, wealth, or power; or (c) Plaintiff's financial condition.**  Comments or evidence concerning CSXT's corporate status, size, wealth, financial condition, or "power" are wholly irrelevant and plainly prejudicial.[6]  Similarly, comments or arguments meant to highlight alleged disparities in the relative standing or financial condition of the parties are improper.[7,8]  It is also inappropriate for a plaintiff to attempt to arouse the jury's sympathy with references to his own financial condition or poverty.  See Norfolk S. Ry. Co. v. Thompson, 208 Ga. App. 240, 246, 430

---

[6] See Adams v. Camp Harmony Ass'n, Inc., 190 Ga. App. 506, 508, 379 S.E.2d 407, 409 (1989) (holding counsel's comments regarding "the financial condition of defendant and its ability to continue to operate in the face of a large judgment" were prejudicial); see also Gonzalez v. Volvo of Am. Corp., 734 F.2d 1221, 1225-26 (7th Cir. 1984) (ordering new trial where counsel repeatedly referred to defendant's corporate size and portrayed it as preying on innocent consumers); City of Cleveland v. Peter Kiewet Sons' Co., 624 F.2d 749, 756-757 (6th Cir. 1980) (noting counsel's "pervasive misconduct" and continuous references to the size and power of defendant).

[7] See CSX Transp., Inc. v. Levant, 262 Ga. 313, 314, 417 S.E.2d 320, 321 (1992) (holding that the plaintiff's characterization of his case as a dispute between a "labor man" and "the big railroad" was improper); Strickland v. Stubbs, 218 Ga. App. 279, 282, 459 S.E.2d 473, 476 (1995) (Beasley, C.J., concurring specially) ("'[N]either the wealth of the plaintiff nor the defendant is relevant.'") (quoting Denton v. Con-Way S. Express, 261 Ga. 41, 42, 402 S.E.2d 269 (1991)); Am. Cas. Co. v. Seckinger, 108 Ga. App. 262, 263, 132 S.E.2d 794, 796 (1963) (explaining argument regarding "differences between the parties respecting their financial ability" is improper, irrelevant, and unduly prejudicial).

[8] References to the "nature or size" of a party's law firm are likewise improper.  See, e.g., Sanders v. Johnson, 859 S.W.2d 329, 332 (Tenn. App. 1993).

S.E.2d 371, 376-77 (1993) (concluding that counsel's reference to the plaintiff's financial straits was improper); cf. Shaps v. Provident Life & Acc. Ins. Co., 244 F.3d 876, 886 (11th Cir. 2001) (noting general rule that "a jury should not be advised about the wealth or poverty of the parties").

**16. Suggestion that Plaintiff is entitled to lost future wages/earning capacity.**   Although the pretrial order does not refer to future lost wages/earning capacity, Plaintiff previously indicated he seeks recovery for lost "future income and benefits." (See doc. no. 15 at 4.)  Plaintiff returned to work without restrictions and is working full-time.  (See Oskouei Dep. at 29 (attached hereto as Ex. D); Pl.'s Dep. at 27, 29, 114.)  According to Plaintiff, he is "having a blast," intends to continue working until he is eligible for retirement at age sixty (60),[9] and "might work over." (Pl.'s Dep. at 30.)  Plaintiff is able to ride his bike and work out at the gym.   (Id. at 22-26.)  Finally, none of Plaintiff's physicians has opined that Plaintiff's alleged injuries will affect his work-life expectancy.  (See Oksouei Dep. at 29 (explaining that he could not opine "to a reasonable degree of medical certainty" that Plaintiff would suffer any further injury to his back).)

---

[9] As discussed *infra*, railroad employees like Plaintiff with 30 years of service are eligible to begin receiving full retirement benefits at age 60.   See 45 U.S.C. § 231a(a)(1)(ii)-(iii).

Under the FELA, a "plaintiff may recover damages for such results of the defendant's wrong as the plaintiff *will probably suffer* in the future." Dalebout v. Union Pac. R.R. Co., 980 P.2d 1194, 1198 (Utah App. 1999) (emphasis original; internal quotations omitted).  Stated differently, a FELA plaintiff must demonstrate a "reasonable certainty of future damages" to warrant a jury charge on that issue. Trejo v. Denver & Rio Grande W. R.R. Co., 568 F.2d 181, 184 (10th Cir. 1977).

An FELA claimant is only entitled to recover the difference in what he was able to earn before the alleged injury and what he could have earned thereafter.  See, e.g., Trejo, 568 F.2d at 184 (citing Taylor v. Denver & Rio Grande W. R.R. Co., 438 F.2d 351, 354 (10th Cir. 1971); Baker v. Baltimore & Ohio R.R. Co., 502 F.2d 638, 644 (6th Cir. 1974)).  Similarly, "*if* a plaintiff shows that his injury has caused a diminution in his ability to earn a living, he or she may recover damages covering the extent to which the railroad's negligence caused the diminution in earning capacity." Fashauer v. New Jersey Transit Rail Ops., Inc., 57 F.3d 1269, 1284 (3d Cir. 1995) (emphasis added; alteration and internal quotation marks omitted).  However, recovery of lost future earnings "is appropriate only where the plaintiff 'has produced competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him.'" Id. (quoting Gorniak v. National R.R. Passenger Corp, 889 F.2d 481, 484 (3d Cir. 1989)).

14

By his own admission, Plaintiff has no evidence his injury will affect his ability to earn money in the future.  Nor is there any evidence showing Plaintiff's injury has adversely affected his current or future wages. Plaintiff has not come forward with any non-speculative medical testimony demonstrating that his injury will affect his ability to work or narrow the range of gainful employment opportunities available to him.  Likewise, Plaintiff has not identified any evidence—such as expert testimony from an economist— explaining the injury's effect on his future income stream.

In sum, any lost future wages/earning capacity claims are devoid of evidentiary support and should be deemed abandoned.  Consequently, Plaintiff should be precluded from arguing or presenting unsupported lost future wages/earning capacity claims to the jury.  <u>Fashauer</u>, 889 F.2d at 1284-85; <u>Quinones-Pacheo v. American Airlines</u>, 979 F.2d 1, 6-7 (1st Cir. 1992).

**17. Argument that CSXT should have sent a track inspector ahead of Plaintiff's train or assertion that Plaintiff's train was a "hot train."** The Court granted summary judgment to CSXT on Plaintiff's claim that CSXT failed to inspect the subject track in accord with federal regulations.  (Doc. no. 81 at 37.) However, the Court suggested genuine issues of fact remain as to whether CSXT should have issued a flash flood warning, directed Plaintiff to proceed at restricted

speed, or sent a track inspector ahead of Plaintiff's train.  (Id. at 43-44.)   The Court

also concluded that Plaintiff's common-law inspection claims should survive

summary judgment.  (Id. at 45-46.)

As CSXT has noted elsewhere, the Federal Railroad Administration ("FRA")

"prescribes *comprehensive* national track safety standards which address

maintenance, repair, and inspection of tracks."   Duluth, Winnipeg, & Pac. Ry. Co.

v. City of Orr, 529 F.3d 794, 795-796 (8th Cir. 2008) (citing 49 C.F.R. Part 213)

(emphasis supplied).  As the Court has already determined, CSXT complied with

this comprehensive scheme of FRA regulations which:

> establish a specific inspection protocol including how, 49 C.F.R. §
> 213.233(b), when, §§  213.233(c) & .237(a)-(c),  and  by  whom, §§
> 212.203, 213.7 & .233(a),  track  inspections  must  be  conducted;  the
> regulations establish a national railroad safety program intended to
> promote safety in all areas of railroad operations, § 212.101(a); federal
> and state inspectors determine the extent to which the railroads,
> shippers, and manufacturers have fulfilled their obligations with respect
> to, among other things, inspection, § 212.101(b)(1); and railroads face
> civil penalties for violations, § 213 App. B. It is clear the FRA
> regulations are intended to prevent negligent track inspection…

Lundeen v. Canadian Pacific Railway Co., 447 F.3d 606, 614 (8th Cir. 2006)

("Lundeen I"), *vacated on other grounds*, 532 F.3d 682, 688 (8th Cir. 2008)

("Lundeen II").[10]   Courts  have  determined  that  the  FRA's  track  inspection

---

[10] The Eighth Circuit vacated Lundeen I following amendments to 49 U.S.C. §
20106; however, the Eighth Circuit did not disturb its earlier conclusion that FRA

regulations substantially subsume, and thus preempt, negligent inspection claims not based on a violation of federal regulations. See id.[11]  Accordingly, the FRA's track inspection regulations preclude any claim that CSXT should have sent a track inspector ahead of Plaintiff's train.[12]

In this regard, the FRA has not only prescribed requirements for the regular inspection of track, but also promulgated regulations specifying when special inspections and other actions are required in response to weather events.  See 49 C.F.R. § 213.239.[13]  There is no evidence—and Plaintiff has never alleged—that CSXT violated 49 C.F.R. § 213.239.

---

track safety standards preempt common law negligent inspection claims. See Lundeen II, 532 F.3d at 687-88.

[11] See also Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co., 270 F. Supp. 2d 1183, 1187 (C.D. Cal. 2003) ("[T]he maintenance, repair, and inspection of track conditions is directly and comprehensively covered by the FRSA."); Harris v. Norfolk S. Ry. Co., 2012 U.S. Dist. LEXIS 176488, at *17-19 (S.D. W. Va. Dec. 12, 2012) (concluding inspection claim based on violation of internal company rules was preempted by FRA regulations), rev'd on other grounds, 784 F.3d 954, 2015 U.S. App. LEXIS 7160 (4th Cir. Apr. 30, 2015).

[12] Cf. Waymire v. Norfolk & W. Ry. Co., 218 F.3d 773, 776 (7th Cir. 2000) (holding FRA train speed regulations precluded FELA excessive speed claim); see also Norris v. Cent. of Ga. R.R. Co., 280 Ga. App. 792, 795, 635 S.E.2d 179, 183 (2006) (following Waymire to conclude FRA regulation precluded ballast claim).

[13] 49 C.F.R. § 213.239 provides: "In the event of fire, flood, severe storm, or other occurrence which might have damaged track structure, a special inspection shall be

Section 213.239 requires special inspections only after floods or *severe* storms.  While it is undisputed that rain fell in the area of milepost 396 on April 28, 2013, there is no evidence of "fire, flood, severe storm, or other occurrence which might have damaged track structure" so as to trigger § 213.239.   To the contrary, weather data from a nearby National Climatic Data Center for April 27-8, 2013 reveals only minor weather conditions.[14]   As the Court has previously noted, a CSXT train traversed the subject track two hours before Plaintiff's train at 8:37 a.m. without incident (Golden Dep. at 15 (attached hereto as Ex. E)), and weather conditions over the next two hours were substantially similar to the generally prevailing conditions on April 27 and April 28, 2013.[15]  There simply is no evidence of severe weather meriting a special inspection under the regulation.

---

made of the track involved as soon as possible after the occurrence and, if possible, before the operation of any train over that track."

[14] For example, on April 27, 2013, the Cartersville Airport experienced two hours and fifty-two minutes of rain, for a total rainfall of .35 inches, with a maximum wind gust of 21 miles per hour. (See CSXT Ex. C, NOAA Certified Weather Data for Cartersville Airport on April 27, 2013 (attached).) On April 28, 2013, between 12:00 a.m. and 12:00 p.m., the Cartersville Airport experienced three hours and fifty-four minutes of rain for a total rainfall of .86 inches with a maximum wind gust of 17 miles per hour. (See CSXT Ex. C, NOAA Certified Weather Data for Cartersville Airport on April 28, 2013 (attached).)

[15] (See CSXT Ex. C, NOAA Certified Weather Data for Cartersville Airport on April 28, 2013 (showing .42 inches of rainfall between 8:00 a.m. to 9:00 a.m., .05 inches of rainfall between 9:00 a.m. and 10:00 a.m., and only trace amounts of

The FRA's guidance regarding § 213.239 suggests that only weather severe enough to trigger a warning from the National Weather Service ("NWS") (*e.g.*, for a flash flood) warrants a special inspection.  See Notice of Safety Advisory, 62 Fed. Reg. 46793, 46794-95 (1997) (advising railroads to adopt a practice to receive notifications of flash flood warnings issued by the NWS and conduct special inspections when such warnings are issued).  In stark contrast to the kinds of events the FRA has explained trigger a special inspection, here CSXT received no alerts of severe weather for the subject track on the day of the incident (see Golden Dep. at 20-22), Plaintiff recalls nothing significant about the weather on the day of the incident other than light to moderate rain (see Pl.'s Dep. at 54, 60), and there was no damage to track structure.  Accordingly, CSXT had no duty under the FRA's track inspection regulations to conduct a special inspection or to issue a flash flood warning.

CSXT is not required to inspect its track every time it rains.  Although Plaintiff points to video evidence of water in a ditch, he has presented no evidence of a weather event of such magnitude as to put CSXT on notice of any danger to rail traffic.  CSXT respectfully requests the Court to reconsider these issues and grant this motion in limine.

---

rainfall between 10:00 a.m. and 11:00 a.m., with rainfall occurring from 8:07 a.m.-9:34 a.m. and from 10:14 a.m.-10:24 a.m.).)

Likewise, Plaintiff should be prohibited from offering irrelevant evidence or argument that Plaintiff's train was a "hot train." There is no evidence that CSXT ignored safety concerns when it decided to send the track inspector behind Plaintiff's train—particularly when another freight train had traversed the subject track without incident just two hours earlier.  (See Golden Dep. at 15.)  Rather, Plaintiff seeks to make a naked accusation of "profit motive" in hopes the jury will act on prejudice towards a large, foreign corporation.  The argument is also an implicit appeal to the jury to punish CSXT, which the Court should not allow for the reasons discussed *supra* at Part I(2).  Given the undisputed evidence that CSXT complied with comprehensive FRA regulations governing track inspection and safety, the Court should exclude any such argument pursuant to Fed. R. Evid. 401-403.

## II.  MATTERS WHICH SHOULD BE ADMITTED

The following matters should be admitted into evidence at trial:

**1. Plaintiff's eligibility for full retirement benefits at age 60.**  If Plaintiff is allowed to present a claim for lost future wages or earning capacity, the Court should allow CSXT to present evidence of Plaintiff's probable retirement age. Railroad employees like Plaintiff with 30 years of service are eligible to begin receiving full retirement benefits at age 60.  See 45 U.S.C. § 231a(a)(1)(ii)-(iii).

Evidence regarding Plaintiff's probable retirement age bears directly on his work-life expectancy and should be admitted.  See Norfolk S. Ry. Corp. v. Henry Tiller, 179 Md. App. 318, 326-27, 944 A.2d 1272, 1278 (2008) ("On the issue of the loss of future wages, the age at which the injured employee would have been expected to stop working, had the accident never occurred, is obviously very material. The employee's eligibility for retirement benefits at a particular age, moreover, is unquestionably relevant evidence as to the probable age at which the employee might have been expected to stop working.").[16]  Thus, even if the Court determines that evidence of the potential amount of any future retirement benefits should be excluded, evidence of Plaintiff's potential *eligibility* for early retirement should nevertheless be admitted.[17]   At a minimum, CSXT should be allowed to present evidence regarding the actual retirement age and work-life expectancies of

---

[16]Although the Tiller court ultimately decided that evidence of future retirement benefits should be excluded, 179 Md. App. at 340, 944 A.2d at 1286, the panel did acknowledge the obvious materiality of evidence of the plaintiff's *eligibility* to retire.

[17] See Cowden v. BNSF Ry. Co., 980 F. Supp. 2d 1106, 1127 (E.D. Mo. Oct. 30, 2013) (allowing evidence that claimant was eligible for retirement at 60); Stevenson v. Union Pac. R.R. Co., No. 4:07CV00522-BSM, 2009 WL 652932, at *3, 2009 U.S. Dist. LEXIS 22835, at *6 (E.D. Ark. Mar. 12, 2009) ("Defendant can introduce evidence that plaintiff would be eligible to retire at age 60, however it will be precluded from introducing evidence as to the availability of retirement benefits or the amount."); Gaskins v. CSX Transp., Inc., 2006 U.S. Dist. LEXIS 100826, at *23 (N.D. Ga. Sept. 5, 2006) (allowing CSXT "to offer evidence that Plaintiff would be eligible for retirement at age 60").

railroad workers.  See, e.g., CSX Transp., Inc. v. Pitts, 430 Md. 431, 470-471, 61

A.3d 767 (2013).

**2. Weather Records from the National Oceanic & Atmospheric**

**Administration ("NOAA").**  CSXT Trial Ex. 35 (attached hereto as Ex. C) (see

doc. no. 88 at 62) consists of certified NOAA weather reports for April 27-28, 2013

(discussed *supra* at footnotes 14 & 15).  Plaintiff objects to the use of this exhibit on

the ground that CSXT did not produce it during discovery, but contests neither the

relevancy nor the accuracy of the information.  (See doc. no. 88 at 65.)

CSXT respectfully requests the Court to take judicial notice of the NOAA

weather data pursuant to Fed. R. Evid. 201.[18]   "[T]he law is abundantly clear that

under Fed. R. Evid. 201, a court may take judicial notice of 'specific facts' found in

governmental weather reports, such as precipitation for a discrete period of time,

temperature range, wind direction, and time of sunset."[19]   Contrary to Plaintiff's

---

[18] The certified NOAA records are also admissible government reports pursuant to
Fed. R. Evid. 803(8).  See, e.g., Tommaseo v. United States, 75 Fed. Cl. 799, 806-07
(2007) (citing In re Complaint of Munyan, 143 F.R.D. 560, 566 (D.N.J. 1992)).
And, as public agency publications, the certified NOAA records are self-
authenticating.  See id. (citing Fed. R. Evid. 902(5)).

[19] Great Am. Ins. Co. v. Summit Exterior Works, LLC, No. 3:10-CV-1669, 2012
U.S. Dist. LEXIS 24780, at *4 (D. Conn. Feb. 27, 2012)  (citing Heilman v. Lyons,
No. 2:09-CV-2721, 2012 U.S. Dist. LEXIS 13303, 2012 WL 371600, at *8 (E.D.
Cal. Feb. 3, 2012); Sadler v. Michigan Dept. of Corr., Civ. Action No. 09-11375,
2011 U.S. Dist. LEXIS 64426, 2011 WL 2462028, at *7 (E.D. Mich. Apr. 21,

argument, discovery is generally not "'required of documents of public record which are equally accessible to all parties.'" Ferrari v. County of Suffolk, 2013 U.S. Dist. LEXIS 110789, at *16-17 n.7, 2013 WL 4017022 (E.D.N.Y. Aug. 6, 2013) (quoting Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc., 426 F. Supp. 2d 68, 90 (W.D.N.Y. 2005)). CSXT was not required to produce the publicly available NOAA records, and Fed. R. Civ. P. 37(c) provides no basis for exclusion. Id.

More to the point, Fed. R. Evid. 201 authorizes the Court to take judicial notice of a public record—either *sua sponte* or upon request—at any stage in the proceedings. See Fed. R. Evid. 201(c) & (d). Plaintiff has had ample time to evaluate and respond to CSXT's exhibit and has articulated no prejudice which would arise from the Court or the jury's consideration of these facts. Accordingly,

---

2011); Pryor v. City of Chicago, No. 07-C-2479, 2010 U.S. Dist. LEXIS 8072, 2010 WL 431470, at *2 & n. 1 (N.D. Ill. Feb. 1, 2010); Doran v. Contoocook Valley Sch. Dist., 616 F. Supp. 2d 184, 194 & n. 8 (D.N.H. 2009); Pate v. Norris, No. 4:05-CV-00491, 2007 WL 990698, at *19 & n. 10 (E.D. Ark. Mar. 29, 2007); Allen v. Ashcroft, Civil No. 03-441-MJR, 2006 U.S. Dist. LEXIS 46139, 2006 WL 1882672, at *6 (S.D. Ill. July 7, 2006); Chubb & Son, Inc. v. Kelleher, No. 92-CV-4484, 2006 U.S. Dist. LEXIS 67879, 2006 WL 2711543, at *4, n.2 (E.D.N.Y. Sept. 21, 2006); Freeman v. Berge, No. 03-C-0021-C, 2003 U.S. Dist. LEXIS 26763, 2003 WL 23272395, at *13 (W.D. Wis. Dec. 17, 2003)); see also Sanchez v. City of Fresno, 2014 U.S. Dist. LEXIS 67863, at *9 n.7 (E.D. Cal. May 16, 2014) (concluding that weather data was proper subject of judicial notice because "the information contained therein can be determined from sources whose accuracy cannot reasonably be questioned"); In re Davenport Bev. Corp., 505 B.R. 374, 382 (Bankr. D. Mass. 2014) (taking judicial notice of weather conditions as reported on NOAA website).

the Court should take judicial notice of the undisputed facts recorded in the NOAA reports.[20]

## III.  CONCLUSION

For all of the foregoing reasons, CSXT requests that this omnibus motion in limine be granted *in toto*.

Respectfully submitted this 25th day of June, 2015.

By:   /s/ James W. Purcell

James W. Purcell, Esq.
Georgia Bar No. 589850
FULCHER HAGLER LLP
P.O. Box 1477
Augusta, Georgia 30903-1477
Telephone:  (706) 724-0171
E-Mail:  jpurcell@fulcherlaw.com

| | |
|---|---|
| John W. Baker, Jr., Esq., BPR #001261 | J. Anderson Davis, Esq. |
| BAKER, O'KANE, ATKINS & THOMPSON | BRINSON ASKEW BERRY SIEGLER RICHARDSON & DAVIS, LLP |
| P.O. Box 1708 | P.O. Box 5007 |
| Knoxville, Tennessee 37901-1708 | Rome, GA 30162-5007 |
| Telephone: (865) 637-5600 | Telephone (706) 291-8853 |
| E-mail: jbaker@boatlf.com | E-mail: adavis@brinson-askew.com |

Attorneys for Defendant

---

[20] See KFD Enters., Inc. v. City of Eureka, 2014 U.S. Dist. LEXIS 64616, at *10-11, 2014 WL 1877532 (N.D. Cal. May 9, 2014) (taking judicial notice of public records and rejecting objection that the records should have been produced in discovery); Estate of Torres v. Terhune, 2002 U.S. Dist. LEXIS 1134, at *4-5 (E.D. Cal. Jan. 9, 2002) (taking judicial notice despite objection that exhibit was not produced in discovery); see also Fowler v. Crawford, 2007 U.S. Dist. LEXIS 53070, at *2-4, 2007 WL 2137803 (W.D. Mo. July 23, 2007) (refusing to strike public records which were not disclosed prior to summary judgment).

## <u>CERTIFICATES OF COMPLIANCE & SERVICE</u>

I hereby certify that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1C (Times New Roman, 14 pt.) for documents prepared by computer.  I further certify that I have this 25th day of June, 2015, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

> Michael Warshauer, Esq.
> Trent Shuping, Esq.
> Warshauer Law Group, P.C.
> 2740 Bert Adams Road
> Atlanta, GA 30339
> MJW@warlawgroup.com
>
> Randall D. Larramore, Esq.
> Pamela R. O'Dwyer, Esq.
> Paty Rymer & Ulin, PC
> 19 Patten Parkway
> Chattanooga, TN 37402
> r-larramore@prandulaw.com

> By:    /s/ James W. Purcell