# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

CHRISTOPHER GARY SWOOPE,

    Plaintiff,

v.

                                  CIVIL ACTION FILE NO.:
                                  4:13-CV-0307-HLM

CSX TRANSPORTATION, INC.,

    Defendant.

## ORDER

This is an action filed under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. The case is before the Court on Defendant's Omnibus Motion in Limine [107] and on Plaintiff's Motion in Limine [108].

## I.   Procedural Background

On June 17, 2015, the Court directed the Parties to file

their Motions in Limine, if any, by July 25, 2015.  (Order of

June 17, 2015 (Docket Entry No. 106).)  On July 25, 2015,

Defendant filed its Omnibus Motion in Limine ("Defendant's

Motion in Limine").  (Docket Entry No. 107.)  On that same

day, Plaintiff filed his Motion in Limine ("Plaintiff's Motion in

Limine").  (Docket Entry No. 108.)  The briefing processes

for both Motions are complete, and the Court finds that the

matter is ripe for resolution.

## II.   Defendant's Motion in Limine

Defendant's Motion in Limine raises a number of

issues.  (See generally Def.'s Mot. Limine (Docket Entry No.

107).)  The Court addresses those issues in turn.

2

## A.    Subsequent Remedial Measures

Defendant seeks to exclude portions of an accident report that it prepared relating to the incident that propose subsequent remedial measures. (Def.'s Mot. Limine at 1-3.) According to Defendant, those measures are inadmissible under Federal Rules of Evidence 407 and 403.    (Id.) Plaintiff agrees that the Court should exclude evidence of subsequent remedial measures unless Defendant opens the door. (Pl.'s Resp. Def.'s Mot. Limine (Docket Entry No. 111) at 1-2.)

Federal Rule of Evidence 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;

3

- culpable conduct;

- a defect in a product or its design; or

- a need for a warning or instruction.

But the Court may admit this evidence for another purpose, such as impeachment or–if disputed–proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.  Federal Rule of Evidence 403, in turn, states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Applying that authority, the Court grants this portion of

4

Defendant's Motion in Limine, subject to revisiting the issue if Defendant opens the door at trial.

## B.  Implicit Appeals for Punitive Damages

Defendant argues that the FELA only allows for compensatory damages, and "[a]rguments suggesting or implying the railroad was grossly negligent, has improper motives, or should be punished are inappropriate and prejudicial."  (Def.'s Mot. Limine at 3-4.)  According to Defendant, arguments requesting that the jury act as the conscience of the community, send a message arguments, and arguments presenting counsel's opinion as to "the justness of his client's cause and the perfidy of the defendant" are improper.  (Id. at 4 (internal quotation marks and citation omitted).)  Plaintiff agrees that this evidence

5

and argument are improper. (Pl.'s Resp. Def.'s Mot. Limine at 2.)

The Court grants this portion of Defendant's Motion in Limine for two reasons. First, Plaintiff does not oppose it. Second, this type of evidence and argument is improper.

## C.   Golden Rule

### 1.   Defendant's Motion

Next, Defendant argues that the Court should preclude Plaintiff's counsel from making "Golden Rule" arguments or requesting that jurors put themselves in Plaintiff's shoes. (Def.'s Mot. Limine at 4.) In response, Plaintiff states that he "agrees that Golden rule arguments are prohibited at trial," but argues that "counsel is permitted wide latitude in closing argument and any limitation which [Defendant]

6

seeks to impose is a matter for the trial court's discretion."

(Pl.'s Resp. Def.'s Mot. Limine at 2.) Plaintiff states that he

"objects to the extent [Defendant] seeks to limit Plaintiff's

counsel's ability to argue his case effectively." (Id.)

The Court grants this portion of Defendant's Motion in

Limine. Golden Rule arguments are clearly improper, and

the Court will not limit Plaintiff's counsel's ability to argue his

case effectively by simply excluding such arguments.

### D.  Congressional Intent or Purpose of the FELA

#### 1.  Defendant's Motion

Defendant also argues that the Court should exclude

references to the history of the FELA and its purpose,

arguing that these references are improper and prejudicial.

(Def.'s Mot. Limine at 4-5.) Plaintiff agrees that those

7

references are improper, but states that he "is permitted to discuss the remedies available to him under the law." (Pl.'s Resp. Def.'s Mot. Limine at 2.)

References to the congressional intent or purpose of the FELA are irrelevant and improper. The Court therefore grants this portion of Defendant's Motion in Limine.

## E.   Ineligibility for Worker's Compensation

### 1.   Defendant's Motion

Defendant argues that the Court should exclude references to Plaintiff's ineligibility for workers' compensation benefits, as well as arguments relating to the exclusivity of remedies under the FELA, contending that such references and arguments are irrelevant and prejudicial. (Def.'s Mot. Limine at 5.) Plaintiff states that he

8

"does not agree to be limited in discussing the remedies available to him under the law." (Pl.'s Resp. Def.'s Mot. Limine at 2.)

The Georgia Court of Appeals has noted that "[i]n a FELA case it is improper for the plaintiff to state to the jury that the FELA action is plaintiff's exclusive remedy." <u>Norfolk S. Ry. v. Thompson</u>, 208 Ga. App. 240, 241, 430 S.E.2d 371, 372 (1993) (collecting cases). The United States Court of Appeals for the Sixth Circuit has noted that, where a plaintiff's attorney argued to the jury in closing that the FELA action was the plaintiff's only remedy, "the trial judge simply could have instructed the jury that plaintiff's comments should be understood to mean only that this case was [the plaintiff's] only chance for a jury to determine

9

the truth of his claims, and that the jury should make no other inference about the availability or unavailability of other sources of compensation," and further stated that "it would have been advisable to inform the jury that it should not consider the availability or unavailability of other forms of compensation in deciding the underlying issue of liability." Toth v. Grand Trunk R.R., 306 F.3d 335, 355 (6th Cir. 2002). Applying those authorities, the Court will not permit Plaintiff or his counsel to make reference to Plaintiff's ineligibility for worker's compensation or the unavailability of any benefit, recovery, or remedy aside from the FELA. The Court therefore grants this portion of Defendant's Motion in Limine, subject to revisiting the issue at trial if necessary.

10

**F.    References to Other Settlements, Verdicts, or Lawsuits or Other Accidents, Injuries, or Occurrences**

Defendant argues that the Court should require Plaintiff to make a showing of substantial similarity before permitting Plaintiff to introduce evidence relating to other occurrences or claims.    (Def.'s Mot. Limine at 5-6.)    According to Defendant, "[a]bsent a showing of substantial similarity, evidence of prior accidents is both irrelevant and unduly prejudicial." (Id. at 6.) Plaintiff agrees with this portion of Defendant's Motion in Limine.    (Pl.'s Resp. Def.'s Mot. Limine at 3.

The Court grants this portion of Defendant's Motion in Limine for two reasons.  First, Plaintiff does not oppose it. Second, evidence of other settlements, verdicts, or lawsuits

11

or other accidents, injuries, or occurrences would not be admissible absent a showing of substantial similarity.

### G. Suggestion That Defendant Could Have Provided a Safer Place to Work or Used Alternative Methods

Defendant acknowledges "that, as a general rule, evidence of safer alternative methods is both relevant and admissible." (Def.'s Mot. Limine at 6.)  Defendant argues, however, that in FELA cases, "the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative, method for performing the task." (Id. at 6-7 (internal quotation marks and citation omitted).) Defendant contends that "the availability of alternative methods is of no significance if the method employed was

12

AO 72A
(Rev.8/8
2)

not an inherently unsafe one." (Id. (internal quotation marks, footnote, and citation omitted).)   According to Defendant, "Plaintiff should not be allowed to attempt to prove negligence in a vacuum by showing that safer equipment could have been used, irrespective of whether the equipment actually used met the standard of reasonable care." (Id. (internal quotation marks and citation omitted). Defendant requests that the Court "exclude any argument that the mere existence of alternative methods is proof that [Defendant] acted negligently." (Id.)

Plaintiff argues that his "position is that the conditions encountered by Plaintiff were unsafe because [Defendant] failed to control vegetation on the railroad property and failed to issue any warnings or speed reduction instructions

13

when the conditions made it foreseeable that a tree or other track obstruction[] could exist," and that "[t]he jury must determine whether that is negligence and whether safer alternative methods existed."   (Pl.'s Resp. Def.'s Mot. Limine at 3.)

The Court denies this portion of Defendant's Motion in Limine without prejudice.  The Court will revisit this issue at trial, depending on how the evidence develops.

## H.   Reference to Plaintiff's Good Character, Truthfulness, Reputation for Safety on the Job, or Lack of Employee Discipline

Defendant argues that "[e]vidence of Plaintiff's character or traits should not be admitted for the purpose of proving that he acted in conformity therewith on the date of his accident."  (Def.'s Mot. Limine at 7-8.)  According to

14

Defendant, "evidence of a witness's truthful character is only admissible after the witness's character for truthfulness has been attacked." (Id. at 8 (internal quotation marks and citation omitted).) Defendant contends that "evidence of Plaintiff's supposed good character, work history, or the absence of prior employee discipline is irrelevant." (Id.) Finally, Defendant argues that the Court should not "allow Plaintiff to present evidence that [Defendant] did not charge him with any violation of work rules following the accident unless [Defendant] opens the door by arguing at trial that Plaintiff violated work rules." (Id.)

Plaintiff agrees that evidence as to his "good character, truthfulness, or reputation for job safety" would be inadmissible "unless [Defendant] attacks Plaintiff's character

15

in which case Plaintiff may admit evidence of his good character, truthfulness or reputation to rebut such attacks." (Pl.'s Resp. Def.'s Mot. Limine at 4.) Plaintiff also "agrees with [Defendant's] request to exclude evidence of his lack of employee discipline, unless Defendant says that Plaintiff broke a rule or was careless in some way." (Id.) If that occurs, Plaintiff argues that he "must be allowed to impeach [Defendant] with proof that he was not disciplined, as is the ordinary practice of the railroad when it becomes aware of a rule violation or unsafe practice." (Id.)

Federal Rule of Evidence 404(a)(1) provides: "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person

16

acted in accordance with the character or trait."  Fed. R.

Evid. 404(a)(1).  Federal Rule of Evidence 608 states:

> **(a) Reputation or Opinion Evidence.**  A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> **(b) Specific Instances of Conduct.**  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1) the witness; or

17

> > (2) another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed. R. Evid. 608.

Unless Defendant opens the door by attacking Plaintiff, evidence of Plaintiff's good character, truthfulness, or reputation for job safety would not be admissible. Likewise, evidence as to Plaintiff's lack of employee discipline would not be admissible unless Defendant opened the door to it. The Court therefore grant this portion of Defendant's Motion in Limine, subject to revisiting the issue at trial if Defendant opens the door to such evidence.

18

## I.   Statements by Plaintiff Concerning Anything His Physicians Allegedly Told Him

Defendant seeks to preclude Plaintiff from presenting statements concerning anything that his physicians allegedly told him.  (Def.'s Mot. Limine at 8-9.)  According to Defendant, "[a]lthough Plaintiff may testify as to treatment he has received, he may not offer hearsay regarding what his physician allegedly told him."  (Id. at 8.)

Plaintiff opposes this portion of Defendant's Motion in Limine, arguing that "[t]here are several exceptions under the hearsay rule that could apply to such testimony" and that "whether testimony is hearsay, or falls under an exception, often depends on how and why the question is asked."  (Pl.'s Resp. Def.'s Mot. Limine at 4.)   Plaintiff

19

requests that the Court "handle all hearsay issues as they arise at trial." (Id.)

The Court denies this portion of the Motion in Limine without prejudice. The Court will address the hearsay issues as those issues arise at trial.

## J. Reference to Conversations Plaintiff Has Had With Other People Regarding the Events

Defendant also argues that "evidence of statements made by non-parties during conferences, conversations, or discussions with Plaintiff constitutes inadmissible hearsay," and requests that the Court prohibit Plaintiff "from relaying the substance of any statements made by others in the conversation regarding the underlying accident." (Def.'s Mot. Limine at 9.)

20

Plaintiff opposes this portion of Defendant's Motion in Limine. (Pl.'s Resp. Def.'s Mot. Limine at 5.) According to Plaintiff, "[t]here are several exceptions under the hearsay rule that could apply to trial testimony," and "whether testimony is hearsay, or falls under an exception, often depends on how and why the question is asked." (Id.) Plaintiff asks that the Court "handle all hearsay issues as they arise at trial." (Id.)

The Court denies this portion of the Motion in Limine without prejudice. The Court will address these issues at trial as they arise.

21

## K.   Medical Expenses Paid by Defendant

Defendant argues that because it paid most of Plaintiff's medical expenses under a group insurance contract, the Court should prohibit Plaintiff "from presenting these expenses to the jury as part of its claim for damages or as somehow bearing on the severity of his injuries." (Def.'s Mot. Limine at 9.)  According to Defendant, those payments "are not from a collateral source."   (Id.) Defendant contends that "[e]vidence of medical bills or expenses which [Defendant] has paid is irrelevant," and that allowing Plaintiff to present evidence of those expenses could result in a windfall.  (Id. at 10 (footnote omitted).) Alternatively, Defendant argues that if the Court allows Plaintiff to present this evidence, "the jury should be

22

informed that [Defendant] has in fact paid those expenses pursuant to a collective bargaining agreement (and not as an admission of fault)." (Id.) Plaintiff agrees to this portion of Defendant's Motion in Limine. (Pl.'s Resp. Def.'s Mot. Limine at 5.)

In its reply, Defendant argues that it "fears that detailed presentation of evidence regarding Plaintiff's medical treatment may prompt the jury to wonder whether Plaintiff is in fact facing significant expenses in connection with that treatment." (Reply Supp. Def.'s Mot. Limine at 1.) Defendant "contends that any prejudice or jury confusion on this issue can be avoided if the jury is simply informed of the truth–that [Defendant] has already paid Plaintiff's medical

23

bills pursuant to a group health insurance contract between [Defendant] and Plaintiff's union." (Id. at 1-2.)

As Plaintiff agrees to this portion of Defendant's Motion in Limine, the Court will grant this portion of the Motion. The Court notes that the original Motion simply sought to prohibit Plaintiff from presenting medical expenses paid by Defendant to the jury as part of Plaintiff's claim for damages or as somehow bearing on the severity of Plaintiff's injuries. (Def.'s Mot. Limine at 9.).   The Court therefore denies without prejudice any request by Defendant to seek to introduce evidence or to inform the jury that it paid Plaintiff's medical bills under a group health insurance contract, as Defendant did not properly present that issue in its original Motion.

24

## L.    Reference to Discovery Disputes

Defendant argues that the Court should exclude references to discovery disputes, including any alleged failure or refusal to produce documents or evidence. (Def.'s Mot. Limine at 10-11.) Defendant argues that such disputes are irrelevant, and that "references to such disputes are both improper and prejudicial." (Id. at 10.) Plaintiff agrees that such references are improper. (Pl.'s Resp. Def.'s Mot. Limine at 5.)

The Court grants this portion of Defendant's Motion in Limine, for two reasons. First, Plaintiff does not object to it. Second, discovery disputes or alleged refusals to produce evidence or documents are irrelevant.

25

## M.  References to Individuals Present in the Courtroom Who Are not Active Participants or Witnesses

Next, Defendant seeks to exclude references to individuals present in the courtroom who are not actively participating, or serving as witnesses in, the trial, such as Defendant's claims personnel.  (Def.'s Mot. Limine at 11.) Defendant argues that those references are irrelevant and unduly prejudicial.

In response, Plaintiff argues that Defendant "is not allowed to dictate how Plaintiff will ask his questions or how his counsel will act in Court," and contends that "[o]ne would hope that candor and respect for the Court, opposing counsel and the jury would govern the conduct of everyone involved."  (Pl.'s Resp. Def.'s Mot. Limine at 5.)

26

AO 72A
(Rev.8/8
2)

The Court observes that any limitation requested by this portion of Defendant's Motion in Limine will not hamper Plaintiff's counsel's ability to represent Plaintiff at trial. The Court therefore grants this portion of Defendant's Motion in Limine, subject to revisiting the issue at trial if necessary.

## N. References to Cumulative or Repetitive Trauma or Wearing Out

Next, Defendant argues that the Court should exclude references to cumulative or repetitive trauma, wear and tear, that Plaintiff gave his life to Defendant, or that Defendant used him up. (Def.'s Mot. Limine at 11.) According to Defendant, "Plaintiff claims he was injured following a discrete occurrence," and "any comments relating to Plaintiff 'wearing out' or the like would be irrelevant, inflammatory, and improper." (Id.) In response,

27

Plaintiff argues that Defendant "is not allowed to dictate how Plaintiff's counsel tries this case or what words he uses in argument," and contends that "[t]here is no law supporting [Defendant's] position, but there are centuries of common law practice supporting the wide latitude given in closing." (Pl.'s Resp. Def.'s Mot. Limine at 6.)

The Court finds that any limitation requested by this portion of Defendant's Motion in Limine will not hamper Plaintiff's counsel's ability to represent Plaintiff at trial. The Court therefore grants this portion of Defendant's Motion in Limine, subject to revisiting the issue at trial if it arises.

## O.   Relative Status of the Parties

Defendant argues that the Court should exclude references to the relative status of the Parties, including

28

references to Defendant's "corporate status, size, wealth, financial condition, or power," and "alleged disparities in the relative standing or financial condition of the parties." (Def.'s Mot. Limine at 12 (internal quotation marks omitted).) Defendant also contends that the Court should preclude Plaintiff from making "references to his own financial condition or poverty." (Id.) Plaintiff agrees with this portion of Defendant's Motion in Limine. (Pl.'s Resp. Def.'s Mot. Limine at 6.)

The Court grants this portion of Defendant's Motion in Limine for two reasons. First, Plaintiff does not oppose it. Second, the matters at issue are wholly irrelevant to the issues to be determined by the jury.

29

## P.   Lost Future Wages/Earning Capacity

Defendant argues that the Court should exclude evidence or suggestions that Plaintiff is entitled to recover lost future wages or that Plaintiff has lost earnings capacity. (Def.'s Mot. Limine at 13-15.) Defendant notes that "Plaintiff returned to work without restrictions and is working full-time," and that "none of Plaintiff's physicians has opined that Plaintiff's alleged injuries will affect his work-life expectancy." (Id. at 13.) Defendant contends that "a FELA plaintiff must demonstrate a reasonable certainty of future damages to warrant a jury charge on that issue." (Id. at 14 (internal quotation marks and citation omitted).) Defendant argues that "Plaintiff has no evidence his injury will affect his ability to earn money in the future," that his "injury has

30

adversely affected his current or future wages," and that Plaintiff failed to present expert testimony from an economist showing the effect of the injury on his income stream.  (Id. at 15.)

Plaintiff opposes this portion of Defendant's Motion in Limine, arguing that he "will seek to introduce evidence of his lost capacity to labor," and contending that Defendant's argument concerning Dr. Oksouei's testimony "misstates the requirement to prove causation under Georgia law." (Pl.'s Resp. Def.'s Mot. Limine at 6.)

In its reply, Defendant argues that "Plaintiff did not indicate in the Consolidated Pretrial Order that he was seeking damages for lost future wages or diminished earning capacity."  (Reply Supp. Def.'s Mot. Limine at 2.)

31

Defendant contends that the pretrial order and Local Rule 16.4B(14)(d) required Plaintiff to provide this information in the pretrial order. (Id.) According to Defendant, because Plaintiff did not include that information in the pretrial order, Plaintiff cannot attempt "to recover damages for lost or diminished earning capacity at trial." (Id. at 3.)

Local Rule 16.4B(14) requires that a pretrial order contain an outline of the plaintiff's case. N.D. Ga. R. 16.4B(14). Local Rule 16.4B(14)(d) requires that this outline include "[a] separate statement for each item of damage claimed containing a brief description of the item of damage, dollar amount claimed, and citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage." N.D. Ga. R. 16.4B(14)(d).

32

The rule further cautions: "Items of damage not identified in this manner shall not be recoverable."  Id.

The Consolidated Pretrial Order signed by the Court provided, in relevant part:

> For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and  suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage.  Items of damage not identified in this manner shall not be recoverable.

(Consol. Pretrial Order (Docket Entry No. 105) ¶ 14.) Attachment C to the Consolidated Pretrial Order stated, in relevant part:

## IV.  Damages

### 1.  General Damages

33

Plaintiff is entitled to general damages for pain and suffering as these terms are commonly defined in their broadest sense.  Plaintiff will ask for an amount to be determined by the enlightened conscious [sic] of the jury.  This amount will be based on the evidence presented at trial, but is not expected to be less than $10 million.  Allowed by 45 U.S.C. § 51.

### 2.   Special Damages

Plaintiff is entitled to special damages for lost past wages.  When he last calculated them they equaled approximately $70,000.  He also missed out on the opportunity to receive a bonus, as well as to accumulate sick days.  Allowed by 45 U.S.C. § 51.

### 3.   Statutes Allowing Damages

45 U.S.C. § 51 provides that Plaintiff is entitled to recover all damages caused in whole or in part by Defendant's negligence.

(Id. at 44-45.)

34

AO 72A
(Rev.8/8
2)

It is clear that the Consolidated Pretrial Order did not mention lost future wages or lost or diminished earning capacity. The Court therefore grants this portion of Defendant's Motion in Limine, and excludes evidence of any lost future wages, based on Plaintiff's failure to list those damages in Attachment C. N.D. Ga. R. 16.4B(14)(d).[1]

## Q.   Track Inspector/Hot Train

Defendant argues that the Federal Railroad Administration (the "FRA") sets forth a comprehensive scheme of national track safety standards governing maintenance, repair, and inspection of tracks, and Defendant complied with this scheme. (Def.'s Mot. Limine

---

[1]Under Georgia law, however, diminished capacity to labor is an element of pain and suffering, and does not require proof of specific lost wages.

35

at 16.)   Defendant contends that this set of regulations "substantially subsume, and thus preempt, negligent inspection claims not based on a violation of federal regulations." (Id. at 17.)  Defendant contends that Plaintiff has no evidence, and has not alleged, that Defendant violated 49 C.F.R. § 213.239, which purportedly governs "when special inspections and other actions are required in response to weather events." (Id.)  Defendant argues that § 213.239 "requires special inspections only after floods or severe storms," and that Plaintiff has no evidence of a flood or severe storm occurring that would trigger § 213.239's requirements. (Id. at 18 (emphasis in original).) According to Defendant, "[t]here simply is no evidence of severe weather meriting a special inspection under the regulation."

36

(<u>Id.</u>) Defendant argues that "[t]he FRA's guidance regarding § 213.239 suggests that only weather severe enough to trigger a warning from the National Weather Service . . . warrants a special inspection," and that it "received no alerts of severe weather for the subject track on the day of the incident." (<u>Id.</u> at 19.)  Defendant contends that it "had no duty under the FRA's track inspection regulations to conduct a special inspection or to issue a flash flood warning." (<u>Id.</u>)

Defendant argues that it

is not required to inspect its track every time it rains.  Although Plaintiff points to video evidence of water in a ditch, he has presented no evidence of a weather event of such magnitude as to put [Defendant] on notice of any danger to rail traffic.

37

(Def.'s Mot. Limine at 19.)  Defendant "requests the Court to  reconsider these issues and grant this motion in limine." (Id.)

Defendant also contends that the Court should preclude Plaintiff "from offering irrelevant evidence or argument that Plaintiff's train was a 'hot train.'" (Def.'s Mot. Limine at 20.) Defendant argues that "[t]here is no evidence that [Defendant] ignored safety concerns when it decided to send the track inspector behind Plaintiff's train."   (Id.) Instead, Defendant contends that "Plaintiff seeks to make a naked accusation of 'profit motive' in hopes the jury will act on prejudice towards a large, foreign corporation," and to make "an implicit appeal to the jury to punish [Defendant]." (Id.)

38

Plaintiff argues that this portion of Defendant's Motion in Limine "misstates the Court's order on its motion for summary judgment." (Pl.'s Resp. Def.'s Mot. Limine at 7.) Plaintiff contends that Defendant "should not be allowed to dictate the arguments Plaintiff's counsel makes at trial." (Id.)

Defendant should have raised these issues in its initial brief in support of its Motion for Summary Judgment. Defendant failed to do so. (See generally Def.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 69).) Defendant also failed to raise this precise argument in its reply in support of its Motion for Summary Judgment. (See generally Reply Supp. Mot. Summ. J. (Docket Entry No. 78).) This issue is a substantive matter that Defendant certainly could have,

39

and should have, raised in a dispositive motion. In any event, a motion in limine is not the proper vehicle to request reconsideration of a previous Order. Defendant failed to file a Motion for Reconsideration within the appropriate period, and this portion of the Motion in Limine essentially seeks reconsideration of the Court's ruling on the Motion for Summary Judgment. (See generally Docket.)[2] The Court therefore denies this portion of Defendant's Motion in Limine without prejudice, subject to reconsideration depending on what the evidence at trial shows.

## R.    Eligibility for Retirement Benefits

Defendant argues that "[i]f Plaintiff is allowed to present a claim for lost future wages or earning capacity, the Court

---

[2]    Plaintiff, on the other hand, filed a Motion for Clarification. (Docket Entry No. 86.)

40

should allow [Defendant] to present evidence of Plaintiff's probable retirement age." (Def.'s Mot. Limine at 20.) Defendant notes that "[r]ailroad employees like Plaintiff with 30 years of service are eligible to begin receiving full retirement benefits at age 60." (Id.) According to Defendant, "[e]vidence regarding Plaintiff's probable retirement age bears directly on his work-life expectancy and should be admitted." (Id. at 21.) Defendant contends that "even if the Court determines that evidence of the potential amount of any future retirement benefits should be excluded, evidence of Plaintiff's potential eligibility for early retirement should nevertheless be admitted." (Id. (emphasis in original) (footnote omitted).) Defendant argues that the Court should allow it "to present evidence

41

regarding the actual retirement age and work-life expectancies of railroad workers." (Id. at 21-22.) Plaintiff argues that this evidence is prohibited under the collateral source rule. (Pl.'s Resp. Def.'s Mot. Limine at 7.) In its reply, Defendant states that "[u]nless Plaintiff somehow opens the door, [Defendant] does not intend to produce any evidence of Plaintiff's actual receipt of disability benefits or the amount of any future retirement/disability benefits." (Reply Supp. Def.'s Mot. Limine at 5.) Instead, Defendant notes that "if and only if Plaintiff is allowed to present a claim for lost future wages or earning capacity," then Defendant "seeks only to admit evidence of Plaintiff's eligibility for early retirement benefits as bearing on his probable retirement age and work-life expectancy." (Id.)

42

As discussed <u>supra</u>, the Court has excluded evidence of lost future wages. The Court therefore denies as moot and without prejudice this portion of Defendant's Motion in Limine

## S.   Weather Records

Defendant requests that the Court take judicial notice of weather data from the National Oceanic and Atmospheric Administration ("NOAA"), which is set forth in Defendant's Trial Exhibit 35. (Def.'s Mot. Limine at 22.) Defendant contends that Federal Rule of Evidence 201 permits the Court to take judicial notice of a public record. (<u>Id.</u> at 23.) Plaintiff agrees with this portion of Defendant's Motion in Limine. (Pl.'s Resp. Def.'s Mot. Limine at 7.)

43

The Court grants this portion of Defendant's Motion in Limine. First, Plaintiff does not oppose it. Second, the Court can properly take judicial notice of NOAA weather records. The Court therefore takes judicial notice of the NOAA weather data set forth in Defendant's Trial Exhibit 35.

## II.   Plaintiff's Motion in Limine

### A.   Christopher Garner's Excluded Opinions

Plaintiff argues that opinions of Mr. Garner that the Court excluded--specifically, testimony concerning the distance at which Mr. Garner believed Plaintiff and his crew member could have seen a tree and the distance in which they could have stopped the train--are inadmissible. (Pl.'s Mot. Limine (Docket Entry No. 108) at 2.) Plaintiff states that he "fears that [Defendant] may attempt to get this

44

opinion in through some back door approach, such as through a report that [Defendant] prepared where these inadmissible opinions are written."   (Id.)   According to Plaintiff, "[t]hese opinions have been excluded and are not appropriate in any form."   (Id.)

Defendant responds that "the Court has ruled that Mr. Garner's opinions regarding the distance at which the tree would have been visible to Plaintiff and the distance within which Plaintiff could have stopped his train should be excluded," and notes that it "has no intention to elicit testimony at trial the Court has deemed inadmissible." (Def.'s Resp. Pl.'s Mot. Limine (Docket Entry No. 112) at 1.) Defendant, however, argues that

> the Court's Order on this issue was specific and
> narrowly tailored.  Plaintiff's motion to exclude Mr.

45

Garner's testimony challenged <u>only</u> Mr. Garner's opinions regarding: (1) the distance (3,816 feet) at which Plaintiff should have seen [the] tree, (2) the distance within which Plaintiff could have stopped with a full service brake application (less than 2,500 feet), (3) the distance within which Plaintiff could have stopped with an emergency brake application (between 1,200-1,700 feet), and (4) whether Plaintiff could have avoided hitting the tree. The Court expressly ruled <u>only</u> that Mr. Garner would not be allowed to testify: (1) that the tree would have been visible at 3,816 feet, (2) that Plaintiff could have stopped in the aforementioned 2,500 feet with regular brakes and between 1,200-1,7000 [sic] with emergency brakes, and (3) that Plaintiff could have avoided the collision.

(<u>Id.</u> at 1-2 (citations omitted).) According to Defendant:

The Court's Order does not preclude Mr. Garner from rendering other expert testimony in this case regarding train handling/characteristics or his analysis of data from the locomotive event data recorder and DVR equipment, including testimony regarding: (1) the speed at which Plaintiff's train was travelling prior to impact, at impact, and after impact; (2) the distance from the tree at which Plaintiff applied a First Service

46

Reduction; (3) Plaintiff's failure to shift the train's throttle to idle, make a Full Service Reduction, or take other action to slow/stop the train until well after the collision; and (4) the train's actual stopping distance following Plaintiff's Full Service Reduction. Plaintiff has made no attempt to challenge these opinions, and the Court should allow Mr. Garner to testify to these issues at trial.

(Id. at 2-3 (citations omitted).)

The Court grants this portion of Plaintiff's Motion in Limine to the extent that Plaintiff seeks to exclude opinions that the Court excluded via its Order on the Motion to Exclude. Those opinions are as follows:

(1) the tree with which Plaintiff's train collided would have been visible to Plaintiff at a distance of 3,816 feet; (2) the train Plaintiff was operating could have stopped within 2,500 feet with a full-service brake application and within 1,200 to 1,700 feet with an emergency brake application; and (3) the train crew could have stopped the train entirely before reaching the tree.

47

(Order of Feb. 24, 2015 (Docket Entry No. 101) at 27-28.) The Court denies the Motion without prejudice as to all other opinions and testimony of Mr. Garner.

### B.   Comments in Defendant's Exhibit 19

Plaintiff seeks to exclude "snarky" comments in Defendant's Exhibit 19, which "consists of email correspondents between two of its supervisors." (Pl.'s Mot. Limine at 2.)   According to Plaintiff, "the email correspondence also contains comments about [Plaintiff]" that "are not expressions of concern for [Plaintiff's] well-being or expressions of sympathy that a hard-working colleague would endure months of pain and a back surgery." (Id. at 2-3.) Plaintiff argues that the "comments

48

are not probative of any fact before the jury and are unduly prejudicial."  (Id. at 3.)

Defendant argues that it intends to offer the e-mails "to demonstrate the damage (or lack thereof) sustained by Plaintiff's locomotive during the collision," contends that "the delay between Plaintiff's accident and his first report of injury . . . is relevant and probative," but states that it "does not seek to admit the exhibited email correspondence for that purpose and is willing to redact [the exhibit] to remove commentary on that issue."  (Def.'s Resp. Pl.'s Mot. Limine at 3.)   Defendant, however, takes issue with "Plaintiff's gratuitous comments regarding an alleged culture of scorn for injured employees," arguing that Plaintiff has not alleged or shown "that anyone at [Defendant] harassed Plaintiff or

49

did anything to discourage him from reporting the injury or obtaining medical treatment." (Id. (internal quotation marks and citation omitted).)   According to Defendant, "[t]o the extent Plaintiff's counsel intends to offer remarks on [Defendant's] alleged corporate culture or to suggest that [Defendant] intimidates employees who report injuries, any such reference would be irrelevant and unduly prejudicial." (Id. at 3-4.)   Defendant also argues that "the post-incident conduct of [Defendant's] officials is irrelevant to the claims and defenses at issue in this case."   (Id. at 4.)

The comments at issue are an email from Danny Scalf stating: "How could he possibly be hurt?" and another email from Mr. Garner to Mr. Scalf stating: "The problem here is this happened on Sunday, and the guy only yesterday

50

stated he was hurt." (Def.'s Ex. 19 (Docket Entry No. 108-1) at 1-2.) Defendant has agreed to redact the comments. The Court therefore grants this portion of Plaintiff's Motion in Limine, requires Defendant to redact the comments, and notes that the Court does not intend to allow this case to turn into a mini-trial about Defendant's alleged corporate culture or alleged intimidation of employees who report injuries. This ruling should resolve all of the Parties' various concerns.

## C.   Defendant's Exhibit 38

Plaintiff notes that Defendant identified a series of photographs as its trial exhibit 38, and states that "Plaintiff has no idea what these photographs are." (Pl.'s Mot. Limine at 4.) According to Plaintiff, the Court should

51

exclude the photographs because "[t]hey were not produced in discovery and [Defendant] has not identified a witness who could authenticate these photographs or provide relevant testimony concerning them."  (Id.)

Defendant acknowledges that it did not produce the photographs at issue before the close of discovery. (Def.'s Resp. Pl.'s Mot. Limine at 4.)   Defendant, however, contends that "it is obvious that the photographs depict the tree stump (located across a fence from the near rail) along with measurements showing the distance from the stump to the near rail," and that Defendant's "personnel present during defense counsel's site visit can authenticate the photographs."   (Id.)   Defendant argues that Plaintiff's counsel conducted a site inspection, and that "Plaintiff's

52

litigation team had ample opportunity to take any photographs or measurements Plaintiff desired." (Id. at 4-5.) According to Defendant, "Plaintiff raises no real issues as to the genuineness, accuracy, or relevance of the photographs or the measurements . . ., because none exist." (Id. at 5.) Defendant also argues that "Plaintiff has identified no prejudice which would arise from the admission of these photographs at trial," and that "the Court has discretion to allow the use of these photographs at trial." (Id.) According to Defendant, "the admission of plainly relevant and probative photographs will assist the jury in gaining a true understanding of the facts." (Id.)

53

In its reply, Plaintiff argues that the Court should exclude the photographs under Federal Rule of Civil Procedure 37(c)(1).  Plaintiff states:

> Defendant concedes that these pictures were not produced prior to the close of discovery (an understatement, as they were produced several months after discovery ended).   Nor has [Defendant] even identified a witness who intends to give an opinion as to stump distance.   There has been no expert disclosure of the mystery person who conducted this surveying work.

(Reply Supp. Pl.'s Mot. Limine at 1.)  Plaintiff also argues that Defendant cannot meet its burden to show substantial justification or a lack of prejudice, noting:

> If [Defendant] engaged a surveyor, then an expert disclosure should have been made.  It is true that a trial is the search for truth, hence our sacred traditions   of   thorough   and   sifting   cross examinations, liberal discovery and sequestration of witnesses.  Another tradition that aids in the search for truth is the prohibition against trial by

54

> ambush embodied by Rule 37.  Here, [Plaintiff]
> should not be forced to go to trial and face pictures
> that were not produced in accordance with Rule 26
> and a mystery expert [Defendant] intends to call to
> testify about an undisclosed land survey related to
> the tree stump.

(Id. at 2.)  Plaintiff contends that he "has real concerns about the genuineness, relevance, and accuracy of the photographs," and complains that the photographs "do not tell a full story."

The Court will preclude Defendant from using the photographs at trial, because Defendant did not disclose the photographs during discovery.  Federal Rule of Civil Procedure 37(c)(1) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a

55

hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Here, Defendant has not shown a substantial justification for failing to disclose the photographs during the lengthy discovery period, and the Court cannot find that the failure was harmless. In any event, the Court agrees with Plaintiff that it is not entirely clear what the photographs depict. The Court therefore grants this portion of Plaintiff's Motion in Limine.

## D.  Tax Returns

Plaintiff complains that, during his deposition, Defendant's counsel questioned him "extensively" about his tax returns, "with the implication being that they were somehow improper and with the overall argument being that

[Plaintiff] is a tax dodger and a bad person."  (Pl.'s Mot. Limine at 4.)  Plaintiff contends that he testified that he gave his information to a tax preparer, who prepared the taxes. (Id.)  Plaintiff seeks to preclude Defendant from cross-examining Plaintiff "over his taxes, which he did not even prepare himself," arguing that "[a]ny information obtained through this testimony is unduly prejudicial and not relevant." (Id.)

Defendant argues that it "may fairly question Plaintiff regarding his tax returns and challenge his credibility by referring to misrepresentations on his federal income tax returns." (Def.'s Resp. Pl.'s Mot. Limine at 5.) According to Defendant, it "can fairly point out to the jury business expenses and taxes which Plaintiff would have incurred but

57

for his alleged injury, as Plaintiff is entitled to recover only net lost wages or take home pay."   (Id. at 6 (internal quotation marks omitted).)   Defendant contends that "Plaintiff's tax returns are a fair subject of cross-examination at trial."   (Id.)

In his reply, Plaintiff notes that Defendant provided no authority to support its position, and argues that Defendant is really just attempting to attack Plaintiff's character. (Reply Supp. Pl.'s Mot. Limine at 2.)   Plaintiff argues:

> Plaintiff's tax returns are what they are.  He hired someone else to prepare them, and provided that person information.  There is no probative value to allowing two seasoned trial attorneys to ask a lay-Plaintiff to explain the finer points of his tax returns.  And any such accusations or innuendo of tax evasion are unduly prejudicial and likely to inflame the jury.

(Id. at 3.)

58

The Court exercises its discretion to exclude this line of questioning under Federal Rule of Evidence 403. Any probative value the testimony might have is slight, and the probative value of this testimony is substantially outweighed by the danger of unfair prejudice to Plaintiff. Plaintiff did not prepare his tax returns, and any alleged errors or shortcomings on those returns are not really relevant to Plaintiff's credibility.  The Court therefore grants this portion of Plaintiff's Motion in Limine.

### E.   Distance of Tree Roots or Prior Location

Plaintiff notes that the Court concluded that an issue of fact existed as to whether the tree at issue was on Defendant's property or in an area immediately adjacent to Defendant's railbed before it fell.  (Pl.'s Mot. Limine at 3.)

59

Plaintiff argues that the Court "did not expressly find that a violation of 49 C.F.R. § 213.37 required showing that the root system of the [tree] was also on railroad property or that the regulation was not violated by vegetation that migrated onto railroad property after initially being somewhere else." (Id. (internal quotation marks omitted).) Plaintiff states that he "does not seek reconsideration of the Court's prior rulings," but instead "seeks a ruling on this motion both to be able to appropriately prepare for trial and to protect the record." (Id. at 5-6.) According to Plaintiff:

> Ultimately, the question is whether the Court intends to charge the jury either (1.) that a violation of the regulation requires that the root structure of the offending vegetation is on railroad property or right of way; or (2.) the regulation is not violated if the offending vegetation did not originate on railroad property. If the Court does not intend to charge the jury in this way, then any

60

arguments about the location of the roots of the
tree or about the location of the tree before it was
on the railroad property are irrelevant and will
confuse the jury and should be excluded.

(Id. at 6.)  Plaintiff argues that

any such jury instructions would be inappropriate
as there is no requirement in the regulatory
language that all portions of the "vegetation on
railroad property" be on railroad property.  Nor is
there any requirement that the root system of
vegetation be on railroad property.  Indeed, such
a requirement would put employees and the public
at risk as it would simply require railroads to
control the roots of vegetation, and not the vines,
branches and leaves that could, as here, put
employees in danger.

(Id.)  According to Plaintiff,

the Court did not hold that the jury would be
required to determine where the tree was before it
fell.    There is no such requirement in the
regulation.  Here, at the time of the incident, the
vegetation was on the railroad tracks.  It does not
matter where it was before.

61

(<u>Id.</u>)

Plaintiff further argues that "[w]here the words of the regulation do not suggest these extra requirements, it is inappropriate for the Court to insert any non-statutory or regulatory hurdles to recovering under the FELA, which is a remedial statute." (Pl.'s Mot. Limine at 7.)   Plaintiff contends that he "is not aware of any court that has imposed these requirements at a jury trial or that has found these to be requirements generally." (<u>Id.</u> (footnote omitted).) According to Plaintiff, "[b]ecause the regulation does not contain these requirements, the only basis for instructing the jury would be a concern that the purpose of the regulation was not to prohibit trees falling in rainstorms," but "the purpose of a regulation is irrelevant for the

62

purposes of FELA liability." (Id.) Plaintiff therefore argues that "a jury instruction that imposes a requirement related to the roots of the tree or its location prior to the time it blocked the track is not appropriate," and that "if the Court does not give such a charge, any argument of [Defendant] as to these issues is not relevant and should be excluded." (Id. at 10.)

Defendant argues that "[t]his evidence is relevant to whether: (1) [Defendant] had notice that the tree posed any danger to rail traffic before it fell, less than two hours before Plaintiff's accident; and (2) [Defendant] had any duty to control the tree before it fell." (Def.'s Resp. Pl.'s Mot. Limine at 6-7 (internal quotation marks omitted).) According to Defendant, "[i]f the tree was in fact over 50 feet from the

AO 72A
(Rev.8/8
2)

near rail, it was not within the purview of [49 C.F.R.] § 213.37 before it fell." (Id. at 7.)  Defendant argues that the scope of the FRA's track safety standards "is limited to railroad property," and that "[i]f the tree was located off [Defendant's] right of way and on an adjacent landowner's property, [Defendant] had no duty under FRA regulations to control the tree until after it fell onto the track." (Id. (internal quotation marks omitted).)  Defendant also notes that it "may not be held liable for a violation of § 213.37 absent prior notice of a danger to rail traffic." (Id. at 8.)  According to Defendant, "the location of the tree before it fell is relevant and probative with respect to the issue of notice and therefore whether [Defendant] complied with § 213.37, irrespective of whether the Court concludes that § 213.37

64

applies only to vegetation which has roots on railroad property." (Id. (internal quotation marks and citation omitted).) Defendant contends that "[t]he condition and location of the tree prior to its fall are plainly relevant, and [Defendant] should be allowed to present evidence regarding this issue at trial." (Id.)

In his reply, Plaintiff claims that "[t]he location of the tree before it fell is irrelevant," and contends that the FELA is a remedial statute, intended to provide a mechanism for injured railroad workers to obtain compensation for injuries they sustained as a result of the railroad's negligence or for a violation of a statute or regulation. (Reply Supp. Pl.'s Mot. Limine at 3.) Plaintiff contends that "[t]his is true even if the violation was not the result of negligence and even if the

65

violation could not have been prevented," arguing that "[t]he words of the vegetation regulation are clear and do not provide a notice standard." (Id.)

The Court finds that this issue is really a substantive one, and that this portion of Plaintiff's Motion in Limine is an attempt by Plaintiff to get another bite at this particular apple. The Court therefore denies without prejudice this portion of Plaintiff's Motion in Limine, subject to revisiting the issue at trial depending on the evidence presented.

## F.   Effect of Verdict

Plaintiff seeks to prohibit Defendant "from arguing or introducing any testimony or evidence concerning the effect, or the result of, the claim, suit, or judgment on insurance premiums or charges, or freight charges, either generally or

AO 72A
(Rev.8/8

as particularly applied to [Defendant], or as to the jury as members of the community, as a result of this trial or any other trial."   (Pl.'s Mot. Limine at 10.)   In response, Defendant states that it "does not intend to argue that a verdict for Plaintiff would have ill effects upon [Defendant], the national economy, or the community."   (Def.'s Resp. Pl.'s Mot. Limine at 8.)

The Court grants this portion of Plaintiff's Motion in Limine for two reasons.   First, Defendant does not really oppose it.   Second, this type of evidence or argument is clearly improper.

## G.   Railroad Retirement Benefits

Plaintiff seeks to prohibit Defendant "from arguing or introducing any testimony or evidence that Plaintiff has, will,

AO 72A
(Rev.8/8
2)

or at any time may have been able to receive benefits from the Railroad Retirement Board of the United States Government in the past." (Pl.'s Mot. Limine at 10.) Defendant states that "[s]hould Plaintiff attempt to bring a claim for lost future wages/earning capacity, [Defendant] should be allowed to present evidence of his probable work-life expectancy and eligibility for retirement." (Def.'s Resp. Pl.'s Mot. Limine at 9.)

The Court excluded evidence of lost wages supra Part II. As a result, this portion of Plaintiff's Motion in Limine is moot, because Defendant does not plan to introduce evidence of railroad retirement benefits unless Plaintiff introduces evidence of lost future wages or lost future

68

earning capacity.  The Court therefore denies as moot and without prejudice this portion of Plaintiff's Motion in Limine.

## H.   Health Insurance

Plaintiff argues that he does not seek medical expenses, and that the Court should prohibit Defendant "from arguing or introducing any testimony or evidence that Plaintiff is or may be entitled to receive benefits from private health insurance or Medicare," as this evidence "is highly prejudicial and irrelevant."  (Pl.'s Mot. Limine at 11.)

Defendant states that it "does not seek to introduce evidence of any collateral source," but argues that "if Plaintiff presents any evidence of medical expenses, [Defendant] should be allowed to explain to the jury that it in fact has paid all of those expenses pursuant to a group

69

insurance contract."  (Def.'s Resp. Pl.'s Mot. Limine at 9.)

Defendant contends that "its payments of Plaintiff's medical

expenses are not from a collateral source," and argues that

"the jury should not be left to wonder whether Plaintiff is

facing significant medical expenses when [Defendant] has

in fact paid those expenses."  (Id. (citations omitted)

The Court grants this portion of Plaintiff's Motion in

Limine, and excludes evidence, testimony, or argument

indicating that Plaintiff could receive benefits from private

health insurance or Medicare.  The Court denies without

prejudice any request by Defendant to seek to introduce

evidence or to inform the jury that it paid Plaintiff's medical

bills under a group health insurance contract.

70

## I.   Discipline or Attendance Charges

Plaintiff seeks to prohibit Defendant "from introducing evidence that Plaintiff has been disciplined in the past by the railroad," arguing that this evidence would confuse the jury and would be irrelevant, and "would essentially be character evidence designed to assassinate the character of [Plaintiff] with irrelevant and highly prejudicial evidence." (Pl.'s Mot. Limine at 11.)   According to Plaintiff, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." (Id.) Plaintiff further argues that "[a] litigant's reputation for carelessness or propensity to act negligently is inadmissible to provide

71

that the accused was therefore more likely to have been negligent at the time in question."  (Id. at 11-12.)

Defendant states that it "does not intend to produce any evidence related to employee discipline." (Def.'s Resp. Pl.'s Mot. Limine at 10.)   Defendant, however, argues that "evidence of Plaintiff's work attendance both before and after his accident is relevant to his claimed damages and whether Plaintiff's injuries have any present impact upon his ability to work."  (Id.)

The Court grants this portion of Plaintiff's Motion in Limine, and excludes evidence of disciplinary charges against Plaintiff, including attendance charges.  The Court will revisit this issue at trial if Plaintiff somehow opens the door to this evidence.

72

## J.    Timing of Retaining Counsel and Filing Suit

Plaintiff argues that the Court should not allow Defendant's counsel to ask Plaintiff about retaining counsel, including when Plaintiff first considered retaining counsel, first spoke to counsel to represent him in this matter, or about "any particulars surrounding the retention of counsel." (Pl.'s Mot. Limine at 12.) Plaintiff argues that "any argument or evidence concerning when [Plaintiff] retained counsel or when he chose to file suit is irrelevant and not probative of any material fact." (Id. at 13.) In response, Defendant states that it "does not intend to present any evidence or remarks as to these issues." (Def.'s Resp. Pl.'s Mot. Limine at 10.)

AO 72A
(Rev.8/8

The Court grants this portion of Plaintiff's Motion in Limine for two reasons.  First, Defendant does not oppose it.  Second,  these matters are clearly irrelevant.

## K.   Assumption of the Risk

Plaintiff seeks to preclude Defendant from arguing "that Plaintiff assumed the risk of injury by going to work on the railroad, by operating a locomotive, or by running a train through the forest," contending that "[a]ssumption of the [r]isk is not a defense in a FELA action."  (Pl.'s Mot. Limine at 13.)   In response, Defendant states that it "does not intend to argue that Plaintiff assumed any risks; however, [Defendant] is entitled to argue Plaintiff's comparative negligence," as well as "that Plaintiff's own negligence was

74

the sole proximate cause of his accident." (Def.'s Resp. Pl.'s Mot. Limine at 10 (citations omitted).)

The Court grants this portion of Plaintiff's Motion in Limine, and excludes evidence or argument relating to assumption of the risk. Comparative negligence and proximate cause, however, are issues for the jury.

## L. Lottery and Contingency Fees

Plaintiff argues that "[a]ny reference or implication that [Plaintiff's] claim is analogous to a lottery ticket or winning the lottery[] is improper argument, and is interjected solely to inflame passion and prejudice in the jury and is improper argument." (Pl.'s Mot. Limine at 14 (internal quotation marks and citation omitted).) Likewise, Plaintiff contends that arguments referring to contingency fees or Plaintiff's

AO 72A
(Rev.8/8
2)

counsel's financial interest in the case are inappropriate.
(<u>Id.</u> at 15.)  In response, Defendant states that it "does not
intend to make any such arguments."  (Def.'s Resp. Pl.'s
Mot. Limine at 11.)

The Court grants this portion of Plaintiff's Motion in
Limine for two reasons.  First, Defendant does not appear
to oppose it.  Second, it is clear that such arguments or
references are inappropriate.

## M.  Plaintiff's Financial Status

Plaintiff argues that "[i]nquiry into the financial status or
condition of [Plaintiff], including but not limited to
examination of Plaintiff regarding non-wage monies
received from third-parties or his family or spouse, or
examination as to whether [Plaintiff] owns his home, cars,

76

or any personal assets or items unconnected with relevant evidence is improper." (Pl.'s Mot. Limine at 15.) According to Plaintiff, this evidence is prejudicial, is irrelevant, and will distract the jury. (Id.)

In response, Defendant states that it "does not intend to make any such references or arguments." (Def.'s Resp. Pl.'s Mot. Limine at 11.) Defendant, however, argues that "to the extent Plaintiff seeks lost wages, [Defendant] is entitled to present evidence regarding the true extent of Plaintiff's wage loss and the absence of any effect upon his present or future wages/earning capacity." (Id.) Defendant also contends that, with respect "to the true severity and permanence of Plaintiff's injuries, [Defendant] is entitled to demonstrate that Plaintiff has returned to work fulltime and

77

that the injury has no current impact upon his income or his ability to work."  (Id.)

The Court grants this portion of Plaintiff's Motion in Limine, and excludes evidence of evidence of Plaintiff's financial status.  Defendant, however, may show at trial that Plaintiff has returned to work full time.

## N.   Collateral Source and Medical Bills

Plaintiff seeks to preclude Defendant "from introducing or in any way referencing any collateral source of injury income received by [Plaintiff] (such as short term disability policies), or the fact that his railroad insurance paid the medical bills . . . , or that he was advanced money by the railroad against any settlement or verdict."   (Pl.'s Mot.

78

AO 72A
(Rev.8/8

Limine at 16.)   Plaintiff argues that he "is not seeking medical expenses."  (Id.)

In response, Defendant states that it "does not intend to present any evidence of collateral sources," but argues that "if Plaintiff is allowed to present evidence of medical expenses to the jury, [Defendant] should be allowed to inform the jury that [Defendant] has in fact paid those bills." (Def.'s Resp. Pl.'s Mot. Limine at 11.)   According to Defendant, it "fears Plaintiff may attempt to use detailed presentation of evidence regarding his medical treatment–coupled with silence as to the issue of medical bills–as an implicit invitation to the jury to speculate as to whether Plaintiff has in fact incurred medical expenses and therefore to include such phantom damages in its verdict."

79

(Id. at 11-12.) Defendant argues "that the obvious prejudice which could raise from such a result can be avoided if the jury is informed that [Defendant] has paid all of Plaintiff's medical expenses pursuant to a group health insurance contract between [Defendant] and Plaintiff's union." (Id. at 12.)

The Court grants this portion of Plaintiff's Motion in Limine, even as to medical bills paid by railroad insurance. As previously noted, Plaintiff is not seeking to recover medical expenses, and this evidence is largely irrelevant. The Court further observes that proper jury instructions can avoid the concerns raised by Defendant.

80

## P.   Union Membership or Attorney Support

Plaintiff argues that the facts that his job is a union job and he is a member of a union are irrelevant and could inflame the jury. (Pl.'s Mot. Limine at 16.)   Plaintiff also notes that, at his deposition, defense counsel asked him "a question about fancy lawyer-thrown Christmas parties for union members." (Id.) Plaintiff argues that his counsel "has never thrown a fancy Christmas party for anyone and such matters are irrelevant."   (Id.)   Plaintiff seeks to prevent Defendant "from making any reference to the fact that the railroad is unionized, that Plaintiff is a union member, or to any activities of lawyer or law firms." (Id.)

Defendant responded that it "does not intend to make any references or remarks at trial which concern Plaintiff's

81

counsel's union activities or which are derogatory of union membership or involvement." (Def.'s Resp. Pl.'s Mot. Limine at 12.) Defendant, however, "contends that it should be allowed to explore the union membership of prospective jurors during voir dire." (Id.) Defendant also argues that it "should be allowed to explore 'union brotherhood' as a basis for potential witness bias should Plaintiff call co-employee witnesses to testify at trial." (Id.)

In his reply, Plaintiff contends that any argument relating to "union brotherhood" of witnesses "would be inappropriate and should be excluded," as "[j]urors may have strong feelings about unions and any such testimony or accusations would be highly prejudicial." (Reply Supp. Pl.'s Mot. Limine at 4.) Plaintiff argues that, if the Court

82

allows this questioning, the Court should allow Plaintiff "to question any management witnesses about their management bias and the culture of harassment and intimidation toward injured employees within [Defendant's] frontline managers." (Id. (internal quotation marks and citation omitted).)

The Court grants this portion of Plaintiff's Motion in Limine, because these matters are irrelevant. Even if the matters are somehow relevant, their probative value that the matters is substantially outweighed by their prejudicial effect. The Court observes that it does not intend to allow this trial to turn into a mini-soap opera about "union brotherhood" or the "culture of harassment and intimidation." The Court will, however, allow Defendant to

83

inquire briefly about union membership of prospective jurors during voir dire.

## IV.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion in Limine [107], and **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion in Limine [108].

IT IS SO ORDERED, this the 29 day of July, 2015.

_____
UNITED STATES DISTRICT JUDGE

84